IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>　　　　Plaintiff,<br><br>v.<br><br>RECOVERY INNOVATIONS, INC d/b/a RI INTERNATIONAL,<br>　　　　Defendant. | CIVIL ACTION NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII), the Americans with Disabilities Act of 1990 ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to Chiara Munna ("Ms. Munna") and a class of similarly-aggrieved individuals who were affected by Defendant's unlawful employment practices. Specifically, Plaintiff Equal Employment Opportunity Commission (the "Commission") alleges that Defendant, Recovery Innovations, Inc d/b/a RI International ("Defendant"), violated Title VII when it subjected Ms. Munna and a class of similarly-aggrieved individuals to a hostile work environment based on their sex, female. Additionally, the Commission alleges that Defendant violated the ADA when it failed to provide a reasonable accommodation for Ms. Munna's disability and discharged her because of her disability in violation of the ADA, 42 U.S.C. §§ 12101, et. seq. The Commission further alleges that Defendant failed to maintain records in violation of the ADA, 42 U.S.C. § 12112(3)(B).

1

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.  This action is authorized and instituted pursuant to Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3); Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

## PARTIES

4.  The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and Title I of the ADA. The Commission is expressly authorized to bring this action by Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3), and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

5.  At all relevant times, Defendant, an Arizona non-profit corporation, operated the Dix Crisis Intervention Center - located at 215 Memorial Drive, Jacksonville, North Carolina (the "Facility").

6.  At all relevant times, Defendant has continuously done business in the State of North Carolina and in Onslow County, North Carolina.

7.  At all relevant times, Defendant has continuously maintained at least fifteen (15) employees.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

9. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

10. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

11. More than thirty (30) days prior to the institution of this lawsuit, Ms. Munna filed a Charge of Discrimination with the Commission alleging that Defendant violated Title VII and the ADA.

12. Defendant responded to Ms. Munna's Charge of Discrimination and participated in all aspects of the Commission's administrative investigation.

13. On March 29, 2024, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII and the ADA.

14. The Commission invited Defendant to join the Commission in informal methods of conciliation to eliminate the discriminatory practices and provide relief.

15. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

16. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

17. By letter dated June 26, 2024, the Commission notified Defendant that conciliation

had failed.

18. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

19. Ms. Munna is a qualified individual with a disability under the ADA. 42 U.S.C. §§ 12102 and 12111(8).

20. Ms. Munna is an individual diagnosed with post-traumatic stress disorder, bipolar disorder, and anxiety.

21. Ms. Munna's diagnosed conditions substantially limit her in the daily activities of sleeping, decision making, regulating mood, emotions and behavior, and interacting with others.

22. Defendant hired Ms. Munna as a full-time Peer Support Specialist at the Facility on or about May 11, 2021.

23. The job of Peer Support Specialist required that employees have a "history of lived experience with mental health or addictive disorders" to be qualified for the job.

24. Ms. Munna's disabilities, in part, qualified her for the Peer Support Specialist position.

25. Ms. Munna was able to perform the essential functions of the Peer Support Specialist position, with or without a reasonable accommodation.

26. Ms. Munna successfully performed the essential functions of the Peer Support Specialist position for months without accommodation.

## COUNT I
### (Title VII- SEX HARASSMENT AND HOSTILE WORK ENVIRONMENT)

27. The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 26 above.

28. Defendant engaged in unlawful employment practices at the Facility in violation of

Section 703(a) of Title VII by subjecting Ms. Munna and a class of similarly-aggrieved female individuals (the "Class Members") to a sexually hostile work environment.

29. In or around August 2021, Ms. Munna transferred to the night shift at the Facility.

30. When Ms. Munna transferred to the night shift, she began to be supervised by a Male Shift Supervisor ("Shift Supervisor").

31. The Class Members were employed by Defendant and were either supervised by the Shift Supervisor or worked alongside him.

32. While employed at the Facility, Ms. Munna and the Class Members experienced intimidation and harassment based on their sex, female, from the Shift Supervisor.

33. The Shift Supervisor repeatedly engaged in physically intimidating and sexual conduct including, but not limited to:

   a. hugging Ms. Munna and the Class Members;

   b. repeatedly and continually pressuring Ms. Munna and the Class Members for hugs;

   c. touching Ms. Munna in a sexual manner;

   d. brushing or rubbing against Ms. Munna and the Class Members;

   e. stroking Ms. Munna's leg in a sexual manner; and

   f. intimidating Ms. Munna and the Class Members with his body by blocking their path.

34. The Shift Supervisor also made unwelcome sexually suggestive comments about Ms. Munna's appearance and sent sexually explicit messages to Ms. Munna.

35. The unwelcome and offensive conduct occurred on nearly every occasion Ms. Munna and Class Members encountered the Shift Supervisor.

36. Prior to November 2021, at least four female employees at the Facility including some of the Class Members complained about the Shift Supervisor harassing them because of their sex to Defendant by reporting the conduct to the Facility's Program Supervisor – the highest-ranking employee at the Facility.

37. These complaints provided Defendant with notice of the unlawful conduct.

38. The Program Supervisor's response to these complaints was dismissive.

39. After one such complaint, the Program Supervisor told one Class Member "if he was attractive, you wouldn't be complaining."

40. In or about October 2021, a female supervisor told Ms. Munna to wear something different to work because the Shift Supervisor was looking at her chest and butt and staring at her.

41. Defendant did not take effective action to stop the harassment in response to these complaints.

42. In November 2021, Ms. Munna reported the ongoing harassment to a co-worker. Ms. Munna and the co-worker then reported the harassment to a Nurse Manager.

43. During Ms. Munna's report to the Nurse Manager, a female shift supervisor was present and offered to file a complaint on Ms. Munna's behalf to initiate an investigation. Ms. Munna agreed.

44. Defendant knew or should have known about the Shift Supervisor's sexual harassment of Ms. Munna and Class Members but failed to take prompt and effective action to stop it.

45. Defendant knew or should have known that Ms. Munna and the Class Members were particularly vulnerable to this type of conduct because of Defendant's requirements for the job.

46. The harassing and hostile conduct based on sex described herein created a hostile work environment for Ms. Munna and Class Members because of their sex, female.

47. The harassment was severe and pervasive. It altered the terms and condition of Ms. Munna's and Class Member's employment and created an abusive work environment.

48. The ongoing harassment resulted in an exacerbation of Ms. Munna's disability which necessitated a medical leave from work.

49. Defendant's policies and procedures were ineffective to prevent and/or correct the harassment.

50. The unlawful practices complained of above deprived Ms. Munna and Class Members of equal employment opportunities and have otherwise adversely affected their status as employees because of their sex, female.

51. The unlawful practices complained of above were willful and intentional.

52. The unlawful practices complained of above were committed with malice or, at a minimum reckless indifference to Ms. Munna's and Class Members federally protected rights.

53. As a direct and proximate result of Defendant's violations of Title VII, Ms. Munna and the Class Members suffered actual damages including but not limited to losses in compensation and benefits, medical expenses, inconvenience, financial hardship, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT II
## (ADA- FAILURE TO ACCOMMODATE)

54. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 above.

55. In January 2022, Defendant engaged in unlawful employment practices at the Facility in violation of the ADA by failing to provide a reasonable accommodation to Ms. Munna

for her disability. 42 U.S.C. § 12112 (a) and (b)(5).

56. On or about November 8, 2021, Ms. Munna experienced a flareup of her PTSD and bipolar disorders which necessitated her leaving work to receive medical treatment.

57. On or about November 9, 2021, Defendant placed Ms. Munna on ADA leave from November 9, 2021 to November 16, 2021.

58. In November 2021, Ms. Munna requested a change of employment status to PRN, meaning she would work as needed rather than work a set schedule or shift. Ms. Munna remained a PRN employee until the termination of her employment in January.

59. On December 8, 2021, Ms. Munna submitted to Defendant's Benefits Specialist ("the Benefits Specialist") an "FMLA or Leave of Absence Medical Certification" form filled out by her health care provider.

60. The "FMLA or Leave of Absence Medical Certification" form contains a description of Ms. Munna's health condition, reasons why Ms. Munna needed a leave of absence, and a confirmation that Ms. Munna could not perform the essential functions of the job which states, in part, the following reasons "inability to focus . . . interacting with others . . . [and] Pt cannot adequately function with any work duties due [to] mood instability."

61. The "FMLA or Leave of Absence Medical Certification" form identifies two types of leave needed by Ms. Munna, continuous leave from October 28, 2021 through January 31, 2022 and intermittent leave two hours once a week from January 31, 2022 with no end date identified.

62. The form contains a note that Ms. Munna's return to work "May be earlier if symptoms resolved."

63. On December 10, 2021, Ms. Munna was advised by the Benefits Specialist that she was placed on ADA leave up to December 31, 2021, that the maximum time Defendant allows for ADA leave is 30 days, and that she had previously used five days.

64. The Benefits Specialist advised Ms. Munna that if she did not have a medical release by December 31, 2021, "Defendant would need to process a termination due to medical and could consider a rehire once [she] received a release and would be interested in reapplying."

65. Ms. Munna submitted a request for leave to Defendant's third party leave administrator FMLA Source and informed the Benefits Specialist she had done so.

66. On December 16, 2021, Defendant's third party leave administrator FMLA Source notified Ms. Munna that she was not eligible for FMLA but that her request for leave would be "reviewed as a possible reasonable accommodation under the Americans with Disabilities Act (ADA)."

67. On January 4, 2022, the Benefits Specialist advised Ms. Munna that her "medical documentation [w]as not received" by Defendant's third party leave administrator FMLA Source and that if she did not have a release as of January 4, 2022, Defendant would "consider processing a termination due to medical."

68. Ms. Munna advised the Benefits Specialist that she thought her doctor's office faxed the medical documentation and that she did not have a medical release but was meeting with her doctor the following week.

69. The Benefits Specialist advised Ms. Munna if she did not have a medical release, Defendant would need to consider processing a termination due to medical.

70. On or about January 7, 2022, Defendant denied Ms. Munna's reasonable accommodation request in the form of continuous leave through January 31, 2022, and intermittent

leave thereafter.

71. On January 7, 2022, Defendant terminated Ms. Munna's employment.

72. Under Defendant's policies, PRN employees were required to work only one day per month to remain actively employed.

73. The leave accommodations needed by Ms. Munna were reasonable and minimal.

74. Defendant refused to provide Ms. Munna with the reasonable accommodation of allowing her to take leave through January 31, 2022.

75. Defendant refused to provide Ms. Munna with the reasonable accommodation of allowing her one additional week of leave to meet with her doctor.

76. Upon information and belief, it would not have been an undue hardship for Defendant to provide Ms. Munna with a reasonable accommodation.

77. Defendant's refusal to provide Ms. Munna with additional leave as a reasonable accommodation for Ms. Munna's disabilities violates the ADA.

78. The practices complained of above have deprived Ms. Munna of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disabilities.

79. The unlawful employment practices complained of above were intentional.

80. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Ms. Munna.

81. As a direct and proximate result of Defendant's violation of the ADA, Ms. Munna suffered actual damages, including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT III
## (ADA- DISCRIMINATORY DISCHARGE)

82. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above.

83. In January 2021, Defendant engaged in unlawful employment practices at the Facility, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, by terminating Ms. Munna's employment because of her disability.

84. Ms. Munna's disability causes substantial impairments to her cognitive functioning and other bodily functions.

85. Ms. Munna was qualified to perform the Peer Support Specialist position with or without a reasonable accommodation.

86. Ms. Munna successfully performed the job of Peer Support Specialist and was meeting Defendant's legitimate expectations for months until she needed to take leave to seek treatment for her disability.

87. Defendant's ADA medical leave policy has a maximum limit of 30 days for medical leave.

88. Ms. Munna's treatment for her disability required leave in excess of 30 days.

89. Ms. Munna did not require leave for any reason other than to seek treatment for her disability.

90. On or around January 7, 2022, Defendant terminated Ms. Munna's employment because she needed more than 30 days of leave for treatment for her disability.

91. The practices complained of have deprived Ms. Munna of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disabilities.

92. The practices complained of above were intentional.

93. The practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Munna.

94. As a direct and proximate result of Defendant's unlawful conduct, Ms. Munna suffered actual damages, including but not limited to back pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life.

## COUNT IV
## (ADA RECORD KEEPING VIOLATION)

95. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 94 above.

96. Since at least May 2021, Defendant engaged in unlawful employment practices at the Facility violating record keeping requirements of the ADA. 42 U.S.C. § 12112(3)(B)

97. Since at least May 2021, Defendant has failed, in violation of 42 U.S.C. § 12112(3)(B), to maintain medical information obtained on separate forms and in separate medical files. Specifically, Defendant commingled post-offer pre-employment medical records and notes from Ms. Munna's medical provider in her personnel file.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant from allowing sexual harassment in the workplace and from allowing a hostile work environment based on sex in violation of Title VII.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from

discriminating against individuals because of their disabilities, including termination based on disability and failing to provide a reasonable accommodation to qualified individuals with a disability, in violation of the ADA.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of past and present unlawful employment practices under Title VII.

D. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability, and which eradicate the effects of past and present unlawful employment practices.

E. Order Defendant to make Ms. Munna whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F. Order Defendant to make Ms. Munna and a class of similarly-aggrieved individuals who were subjected to a hostile work environment based on their sex, female, whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

G. Order Defendant to make Ms. Munna and a class of similarly-aggrieved individuals who were subjected to a hostile work environment based on their sex, female, whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

H. Order Defendant to pay to Ms. Munna and a class of similarly-aggrieved

individuals who were subjected to a hostile work environment based on their sex, female, punitive damages for its willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

I. Order Defendant to maintain information obtained regarding the medical condition or history of an applicant on separate forms and in separate medical files and to treat as a confidential medical record in accordance with 42 U.S.C. § 12112(3)(B).

J. Grant such other relief as the Court deems necessary and proper in the public interest.

K. Award the Commission its cost of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact that arise out of this complaint.

Respectfully submitted this the 6th day of May, 2025.

        U.S. EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION

        ANDREW ROGERS
        Acting General Counsel

        CHRISTOPHER LAGE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        U.S. EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION
        131 M Street, NE
        Washington, D.C. 20507

        */s/ Melinda C. Dugas*
        MELINDA C. DUGAS
        Regional Attorney
        129 W. Trade Street
        Charlotte, NC 28202

YLDA KOPKA
Assistant Regional Attorney


By Counsel:

*/s Taittiona Miles*
TAITTIONA MILES
Trial Attorney
Bar No. 50879
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
129 W. Trade Street
Charlotte, NC 28202
Telephone: (980) 296-1301
Facsimile: (704) 954-6412
Email: taittiona.miles@eeoc.gov

*/s/ Samuel H. Williams*
SAMUEL H. WILLIAMS
N.C. State Bar No. 49622
EEOC, Raleigh Area Office
434 Fayetteville St, Suite 700
Raleigh, NC 27601
Telephone: (984) 275-4820
Facsimile: (704) 954-6412
Email: Samuel.williams@eeoc.gov